Lynne Finley
District Clerk
Collin County, Texas
By Migdalia Martinez Deputy
Envelope ID: 28008054

CAUSE NO. _____   199-05182-2018

| | | |
|---|---|---|
| CRYO GENERATION, INC., | § | THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| CRYO CENTERS OF AMERICA, LLC, | § | |
| | § | |
| *Defendant.* | § | COLLIN COUNTY, TEXAS |

---

## PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION

---

Plaintiff Cryo Generation, Inc. ("Plaintiff" or "Cryo Generation") files its Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction against Defendants Cryo Centers of America, LLC ("Defendant" or "Cryo Centers of America") as follows:

## I.
### SUMMARY OF CLAIMS

Cryo Generation is the only entity in the United States and Canada authorized to sell and distribute the Cryo T-Shock, a type of cryotherapy equipment. With full knowledge of this exclusive arrangement between Cryo Generation and the manufacturer of Cryo T-Shock, Defendant Cryo Centers of America acquired Cryo T-Shock units and wrongfully sold (and is actively seeking to sell) Cryo T-Shock units in the United States and Canada. Moreover, without any permission from Cryo Generation, Cryo Centers of America provided (and is actively seeking to provide) information and materials to customers and potential customers containing Cryo Generation's trademark. Cryo Centers of America's illegal, wrongful, and unlawful conduct is clearly harmful to Cryo Generation's business including its ability to make a profit and to its

---

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION**

Page 1 of 65



EXHIBIT A

goodwill. Further, if such conduct is not immediately enjoined, it will undoubtedly encourage additional entities to engage in the same kind of tortious conduct (i.e., additional companies will similarly ignore Cryo Generation's exclusive rights as the only entity entitled to sell and distribute Cryo T-Shock units in the United States and Canada), thus irreparably altering Cryo Generation's ability to bring circumstances back within the status quo.

## II.
### PARTIES

1.      Plaintiff Cryo Generation is a domestic business corporation organized under the laws of the State of New York, with its principal place of business at 200 Mamaroneck Avenue, Suite 502, White Plains, New York 10607.

2.      Defendant Cryo Centers of America, LLC. is a Texas corporation located in Plano, Texas and may be served with process by serving its registered agent, Taylor Ashton Slater at 2540 N. Watters Road, Suite 160, Allen, Texas 75013, or anywhere else he may be found.

## III.
### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter because the amount of damages Cryo Generation seeks, which is monetary relief over $200,000 but not more than $1,000,000, is within the Court's jurisdictional limits. Personal jurisdiction is proper in this matter because Cryo Centers of America resides and transacts business within the State of Texas.

4.      Venue is proper under Texas Civil Practice and Remedies Code § 15.002 because all or a substantial part of the events giving rise to the claim occurred in Collin County, which is also Cryo Centers of America's principal office in this state.

## IV.
### FACTUAL ALLEGATIONS

5.      This Original Petition and Application for Temporary Restraining Order and

Temporary and Permanent Injunction is supported by the Declaration of Cryo Generation President Stanley Kapica.[1]

6.      Plaintiff Cryo Generation distributes best-in-breed cryotherapy equipment to clients across the United States. Cryotherapy is the therapeutic use of cold air. Various cryotherapy products exist such as cryotherapy chambers, which are devices that surround the body with hyper-cold air for therapeutic purposes. Elettronica Pagani is the owner and manufacturer of the HC Cryo T-Shock ("Cryo T-Shock"), a device which uses state-of-the-art thermography and cryotherapy to treat cellulite and effectuate fat removal from the body.

7.      On September 12, 2017, Elettronica Pagani entered into an Exclusive Distribution Agreement with Cryo Generation wherein Elettronica Pagani granted to Cryo Generation the "***exclusive right to distribute the [Cryo T-Shock] in the United States of America and Canada***" and that further, Cryo Generation will "***undertake the distribution and sale of [the Cryo T-Shock] in [the United States and Canada]***."[2]

> **DISTRIBUTOR**, wishes to enter into this Agreement with **PAGANI** whereby **DISTRIBUTOR** will undertake the distribution and sale of Product in the Territory on the terms and subject to the conditions contained herein;
> • **Territory:** NORTH AMERICA – U.S.A. and CANADA
> **PAGANI** hereby grants to **DISTRIBUTOR** and **DISTRIBUTOR** hereby accepts from **PAGANI** the exclusive right to distribute the Product in the Territory, upon and subject to all terms and conditions set forth in this Agreement

[3]

8.      Therefore, Cryo Generation's business model, including its means for generating

---

[1] A true and correct copy of the Declaration of Stanley Kapica is attached hereto as **Exhibit "A"** and incorporated herein by reference.

[2] *See* "Exclusive Distribution Agreement Between Elettronica PAGANI srl, manufacturing electronic devices and having factory in Paderno Dugnano, Milano, Italy and CRYO GENERATION INC., distributing Aesthetics devices and products having facility in 23 old rt 100 Katonah, NY 10536, USA" (the "Exclusive Distribution Agreement"), a true and correct copy of which is attached hereto as **Exhibit "A-1"** and incorporated herein by reference (emphasis added).

[3] *Id.*

profits, is heavily dependent on its status as the only entity in the United States and Canada with the exclusive right to sell and distribute the Cryo T-Shock. Relatedly, the Exclusive Distribution Agreement is much diminished and largely irrelevant if another entity sells the Cryo T-Shock to consumers in the United States or Canada without Cryo Generation's express permission or consent. Such illegal conduct also opens the floodgates for more entities to inflict further monetary harm on Cryo Generation by ignoring that Cryo T-Shock's manufacturer, Pagani, selected Cryo Generation—and only Cryo Generation—as the exclusive sales and distribution entity for the Cryo T-Shock in the United States and Canada.

9.      By way of information and belief, Cryo Centers of America knows that Cryo Generation is the only entity that may sell or distribute the Cryo T-Shock in the United States or Canada. Accordingly and because of the Exclusive Distribution Agreement, Cryo Centers of America did not originally seek to sell or distribute the Cryo T-Shock in the United States or Canada. Instead, it referred potential customers to an independent contractor of Cryo Generation in return for commission payments from that independent contractor if the sale materialized.[4]

10.     However, based on a written admission from Tyler Slater, a self-described "Kush & Cryo Entrepreneur" and co-owner of Cryo Centers of America, when Cryo Centers of America believed it did not receive the correct commission amount for its referrals to Cryo Generation, Cryo Centers of America made a complete end run around Cryo Generation by obtaining Cryo T-Shock units from outside the United States and Canada and wrongfully selling the units in the United States and Canada.[5]

---

[4] Notably, Cryo Generation is not part of any arrangement that the independent contractor had with Cryo Centers of America.

[5] *See* Email from Tyler Slater to Elettronica Pagani (Sept. 11, 2018), a true and correct copy of which is attached hereto as **Exhibit "A-2"** and incorporated herein by reference.

11.     In the course of its unauthorized and unlawful acts, Cryo Centers of America represented to potential purchasers and purchasers that the Cryo T-Shock contains a manufacturer's warranty backed by Elettronica Pagani. However, Cryo Centers of America did not disclose (and is not disclosing) to any potential purchasers or purchasers that Elettronica Pagani will not honor any warranty on a Cryo T-Shock unit sold in violation of the Exclusive Distribution Agreement (i.e., any Cryo T-Shock not sold or distributed by Cryo Generation in the United States or Canada).

12.     Moreover, by way of information and belief, Cryo Centers of America distributed to Cryo T-Shock customers and potential customers a Cryo Generation protocol treatment manual which contains the Cryo Generation trademark on every page.[6]



[7]

Cryo Centers of America willfully and knowingly used the Cryo Generation trademark in commerce with the sale of products without the consent of Cryo Generation.

13.     After learning of Cryo Centers of America's unlawful and illegal conduct, both

---

[6] *See* Pagani Cryo T-Shock Treatment Protocols, a true and correct copy of which is attached hereto as **Exhibit "A-3"** and incorporated herein by reference.

[7] *Id.*

Elettronica Pagani and Cryo Generation sent communications to Cryo Centers of America demanding that it immediately cease and desist.[8] But Mr. Slater, on behalf of Cryo Centers of America, ignored this demand and responded, "I will continue to sell the units that I have already purchased."[9]

14.     Subsequent evidence obtained by Cryo Generation indicates that Cryo Centers of America continues its ongoing attempts to illegally and wrongfully sell the Cryo T-Shock in the United States and Canada:

 

---

[8] *See* Email from Grassi Gianluca to info@cryocentersofamerica.com (Sept. 11, 2018), a true and correct copy of which is attached hereto as **Exhibit "A-4"** and incorporated herein by reference; *see* Email from Stan Kapica to Tyler Stewart (Sept. 11, 2018), a true and correct copy of which is attached hereto as **Exhibit "A-5"** and incorporated herein by reference.

[9] Email from Tyler Slater to Elettronica Pagani (Sept. 11, 2018) (*see* **Exhibit "A-2"**).



15.     Indeed, Cryo Generation very recently learned that Cryo Centers of America is seeking to finalize the sale of two Cryo T-Shock units in Colorado Springs, Colorado and that the sale is imminent.

16.     As a proximate result of Cryo Centers of America's actions, Cryo Generation has suffered, and will continue to suffer, irreparable harm to its trademark, its goodwill, and its ability to sell the Cryo T-Shock unit in the United States and Canada (thus causing Cryo Generation to lose additional business), serve as the exclusive sales and distribution entity for the Cryo T-Shock in the United States and Canada, and prevent other entities from attempting to sell or distribute the Cryo T-Shock in the United States or Canada. Additionally, Cryo Centers of America already stated it will continue to unlawfully sell the Cryo T-Shock in the United States and Canada.

# V.
## CAUSES OF ACTION

**A.      Tortious Interference with Existing Contract**

17.      The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

18.      The Exclusive Distribution Agreement is a valid contract between Cryo Generation and Elettronica Pagani.

19.      Cryo Centers of America willfully and intentionally interfered with the Exclusive Distribution Agreement.

20.      The interference proximately caused Cryo Generation's injury.

21.      Cryo Generation incurred actual damages or loss as a result of the interference.

22.      As set forth more fully below, Cryo Generation's damages include, but are not limited to actual damages such as the lost benefits of the contract and lost profits, exemplary damages, court costs, and pre- and post-judgment interest.

**B.      Trademark Infringement – 15 U.S.C. § 1125(a)(1)(a)**

23.      The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

24.      The Cryo Generation trademark is a valid and subsisting trademark in full force and effect.

25.      Cryo Centers of America willfully and knowingly used the Cryo Generation trademark in commerce with the sale of products without the consent of Cryo Generation.

26.      Cryo Centers of America's use of the Cryo Generation trademark in connection with its unauthorized sale of the Cryo T-Shock is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Cryo

Centers of America are the same as the products legitimately bearing the Cryo Generation trademark, and originate from, or are sponsored by, authorized by, approved by or otherwise connected with Cryo Generation.

27.     Cryo Centers of America's unauthorized use of the Cryo Generation trademark has infringed upon and materially damaged the value of the Cryo Generation trademark.

28.     As a proximate result of Cryo Centers of America's actions, Cryo Generation has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits.

29.     Cryo Generation has no adequate remedy at law for Cryo Centers of America's infringement. Unless Cryo Centers of America is permanently enjoined, Cryo Generation will suffer irreparable harm.

30.     As a proximate result of Cryo Centers of America's actions, Cryo Generation has also suffered damages including but not limited to loss of sales for products and a loss of goodwill associated with its products.

31.     Cryo Generation is entitled to recover its damages caused by Cryo Centers of America's infringement of the Cryo Generation trademark and to disgorge Cryo Centers of America's profits from their willfully infringing sales and unjust enrichment.

32.     Because Cryo Centers of America has willfully, intentionally, maliciously, and in bad faith infringed on the Cryo Generation trademark, this case qualifies for enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## C.     False Advertising – 15 U.S.C. § 1125(a)(1)(b)

33.     The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

34.     The Cryo Generation trademark is valid and a subsisting trademark in full force and

effect.

35.     Cryo Centers of America willfully and knowingly used the Cryo Generation trademark in commerce with the sale and advertising of products without the consent of Cryo Generation.

36.     The use of the Cryo Generation trademark in connection with the unauthorized sale and advertising of products by Cryo Centers of America is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the Cryo T-Shock units offered for sale by Cryo Centers of America are genuine and authentic products, and originate from, or are sponsored by, authorized by, approved by or otherwise connected with Cryo Generation.

37.     Cryo Centers of America's unauthorized and deceptive use of the Cryo Generation trademark is material and likely to influence consumers to purchase the products, as consumers are likely to believe that product(s) advertised by Cryo Centers of America using the Cryo Generation trademark are genuine Cryo Generation products that come with the quality controls and other benefits associated with products authentically associated with Cryo Generation.

38.     As a result, Cryo Generation has suffered damages including but not limited to loss of sales for products and a loss of goodwill associated with its products.

39.     Because Cryo Centers of America willfully, intentionally, maliciously, and in bad faith infringed on the Cryo Generation trademark, this case qualifies for enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**D.      Unfair Competition – 15 U.S.C. § 1125(a)**

40.     The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

41.     The Cryo Generation trademark is a valid and subsisting trademark in full force and

effect.

42.     Cryo Centers of America willfully and knowingly used the Cryo Generation trademark in commerce through the sale and advertising of products without the consent of Cryo Generation.

43.     Cryo Centers of America's use of the Cryo Generation trademark in connection with its unauthorized sale and advertising of the Cryo T-Shock unit is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Cryo Generation's products because it suggests that the products offered for sale by Cryo Centers of America originate from, or are sponsored by, authorized by, approved by or otherwise connected with Cryo Generation.

44.     Cryo Centers of America's unauthorized sale of products bearing the Cryo Generation trademark, and unauthorized use of the Cryo Generation trademark in advertising, have materially damaged the value of the Cryo Generation trademark and caused significant damage to Cryo Generation's business relations.

45.     Cryo Centers of America's unauthorized sale of products bearing the Cryo Generation trademark, and unauthorized use of the Cryo Generation trademark in advertising, infringe upon the Cryo Generation trademark.

46.     As a result, Cryo Generation has suffered damages including but not limited to loss of sales, trademark infringement, and damage to its existing and potential business relations.

47.     Because Cryo Centers of America has willfully, intentionally, maliciously, and in bad faith infringed on the Cryo Generation trademark, this case qualifies for enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### E.     Trademark Dilution – 15 U.S.C. § 1125(c)

48.     The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

49.     The Cryo Generation trademark is a valid and subsisting trademark in full force and effect.

50.     Cryo Generation is the owner of the Cryo Generation trademark and has expended substantial time, effort, money, and resources advertising and promoting its products and services under the Cryo Generation trademark. As such, the Cryo Generation trademark is the means by which Cryo Generation products and services are distinguished from others in the marketplace.

51.     The Cryo Generation trademark is inherently distinctive, and as a result of Cryo Generation's long, continuous, and exclusive use of the Cryo Generation trademark, it has acquired a secondary meaning associated by purchasers and the public with Cryo Generation's products and services.

52.     Cryo Generation is widely recognized by the general consuming public as the designated source of goods bearing the Cryo Generation trademark.

53.     After the Cryo Generation trademark became famous, Cryo Centers of America willfully used the Cryo Generation trademark in connection with the unauthorized and illegal sale of products. Because the products sold by Cryo Centers of America are not, in fact, products which are genuinely and authentically associated with Cryo Generation, Cryo Centers of America's activities have caused and will continue to cause dilution of the distinctive quality of the Cryo Generation trademark by lessening the public's ability to identify and distinguish genuine Cryo Generation products.

54.     Cryo Centers of America's unlawful actions have harmed the reputation and

goodwill associated with the Cryo Generation trademark, and Cryo Generation has suffered and will continue to suffer immediate and irreparable injury. Further, Cryo Centers of America's actions have harmed and will continue to harm consumers interested in purchasing genuine Cryo Generation products.

55.     Cryo Generation has suffered damages including but not limited to loss of sales, trademark infringement, and damage to its existing and potential business relations.

56.     Because Cryo Centers of America has willfully, intentionally, maliciously, and in bad faith infringed on the Cryo Generation trademark, this case qualifies for enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**F.      Injury to Business Reputation; Dilution – Tex. Bus. & Com. Code § 16.103**

57.     The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

58.     This claim arises under the laws of the State of Texas.

59.     The Cryo Generation trademark is a valid and subsisting trademark in full force and effect.

60.     Cryo Generation is the owner of the Cryo Generation trademark and has expended substantial time, effort, money, and resources advertising and promoting its products and services under the Cryo Generation trademark. As such, the Cryo Generation trademark is the means by which Cryo Generation products and services are distinguished from others in the marketplace throughout Canada and the United States, including Texas.

61.     The Cryo Generation trademark is inherently distinctive, and as a result of Cryo Generation's long, continuous, and exclusive use of the Cryo Generation trademark, it has acquired a secondary meaning associated by purchasers and the public with Cryo Generation's products and

services throughout Canada and the United States, including Texas.

62.     Cryo Generation is widely recognized by the general consuming public throughout Canada and the United States, including Texas, as the designated source of goods bearing the Cryo Generation trademark.

63.     After the Cryo Generation trademark became famous in Texas, Cryo Centers of America willfully used the Cryo Generation trademark in connection with the unauthorized and illegal sale of products. Because the products sold by Cryo Centers of America are not, in fact, genuine and authentic Cryo Generation products, Cryo Centers of America's  actions have caused and will continue to cause dilution of the distinctive quality of the Cryo Generation trademark by lessening the public's ability to identify and distinguish genuine Cryo Generation products.

64.     Cryo Centers of America's unlawful actions have harmed the reputation and goodwill associated with the Cryo Generation trademark, and Cryo Generation has suffered and will continue to suffer immediate and irreparable injury. Further, Cryo Centers of America's actions have harmed and will continue to harm consumers interested in purchasing genuine Cryo Generation products.

65.     Cryo Generation has suffered damages including but not limited to loss of sales, trademark infringement, and damage to its existing and potential business relations.

66.     Because Cryo Centers of America has willfully, intentionally, maliciously, and in bad faith infringed on the Cryo Generation trademark, this case qualifies for an award three times the amount of profits and damages and an award of attorneys' fees pursuant to Tex. Bus. & Com. Code §§ 16.103(c) and 16.104(c).

**G.    Texas Common Law Trademark Infringement**

67.     The foregoing paragraphs are hereby incorporated by reference as if fully set forth

herein.

68.     This claim arises under the laws of the State of Texas.

69.     The Cryo Generation trademark is a valid and subsisting trademark in full force and effect.

70.     Cryo Generation is the owner of the Cryo Generation trademark, which is a distinctive mark and widely recognized by the consuming public. Products bearing the Cryo Generation trademark are sold by Cryo Generation's Consultants throughout Canada and the United States, including Texas.

71.     Cryo Generation is widely recognized as the designated source of goods bearing the Cryo Generation trademark.

72.     Cryo Centers of America's knowing and willful use of the Cryo Generation trademark in connection with the unauthorized and illegal sale of products without Cryo Generation's consent infringes upon the Cryo Generation trademark. This infringement includes selling products bearing the Cryo Generation trademark that are materially different from genuine and authentic Cryo Generation products because, among other reasons, the products sold by Cryo Centers of America are not eligible for the Elettronica Pagani manufacturer's warranty and are not subject to Cryo Generation's other quality control procedures.

73.     The products sold by Cryo Centers of America bearing the Cryo Generation trademark are not, in fact, products which are genuinely and authentically associated with Cryo Generation

74.     The use of the Cryo Generation trademark in connection with the unauthorized sale of products by Cryo Centers of America is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Cryo Centers of

America are the same as the products legitimately bearing the Cryo Generation trademark and endorsed by Cryo Generation, when in fact, they are not.

75.     As a result of Cryo Centers of America's unlawful actions, the reputation and the goodwill associated with the Cryo Generation trademark has been harmed and Cryo Generation has suffered immediate and irreparable injury.

76.     As a result, Cryo Generation has suffered damages and Cryo Generation is entitled to recover its damages, including but not limited to loss of sales for products and a loss of goodwill associated with its trademarks and products.

**H.     Texas Common Law Unfair Competition**

77.     The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

78.     This claim arises under the laws of the State of Texas.

79.     The Cryo Generation trademark is a valid and subsisting trademark in full force and effect.

80.     Cryo Centers of America willfully and knowingly used the Cryo Generation trademark in commerce through the sale and advertising of products without the consent of Cryo Generation throughout Canada and the United States, including Texas.

81.     Cryo Centers of America's use of the Cryo Generation trademark in connection with its unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of Cryo Generation's products because it suggests that the products offered for sale by Cryo Centers of America originate from, or are sponsored by, authorized by, approved by or otherwise connected with Cryo Generation.

82.     Cryo Centers of America's unauthorized sale of products bearing the Cryo Generation trademark, and unauthorized use of the Cryo Generation trademark in advertising, have materially damaged the value of the Cryo Generation trademark and caused significant damage to Cryo Generation's business relations.

83.     Cryo Centers of America's unauthorized sale of products bearing the Cryo Generation trademark, and unauthorized use of the Cryo Generation trademark in advertising, infringe upon the Cryo Generation trademark.

84.     As a result, Cryo Generation has suffered damages including but not limited to loss of sales, trademark infringement, and damage to its existing and potential business relations.

85.     Cryo Centers of America's actions have caused injury to Cryo Generation and Cryo Generation is entitled to damages caused thereby, including punitive damages as a result of Cryo Centers of America's malicious and willful acts.

## I.     Fraud by Nondisclosure

86.     The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

87.     Cryo Centers of America concealed from or failed to disclose certain facts to Cryo Generation. Specifically, Cryo Centers of America did not disclose to Cryo Generation its true intentions, which was not to obtain referrals for Cryo Generation but instead, to obtain Cryo Generation information, including its trademarks, and unlawfully sell the Cryo T-Shock in the United States and Canada.

88.     Cryo Centers of America had a duty to disclose these materials facts to Cryo Generation.

89.     Cryo Centers of America knew Cryo Generation was ignorant of the facts and that

Cryo Generation did not have an equal opportunity to discover the facts.

90. Cryo Centers of America was deliberately silent when it had a duty to speak.

91. By failing to disclose the facts, Cryo Centers of America intended to induce Cryo Generation to take some action or refrain from acting.

92. Cryo Generation relied on Cryo Centers of America's nondisclosure.

93. Cryo Generation was injured as a result of acting without the knowledge of the undisclosed facts.

94. As set forth more fully below, Cryo Generation's damages include, but are not limited to actual damages such as out-of-pocket damages and benefit-of-the-bargain damages, exemplary damages, court costs, and pre- and post-judgment interest.

**J.      Money had and Received**

95. The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

96. Cryo Centers of America holds money it made on illegally and unlawfully selling the Cryo T-Shock units in the United States and/or Canada.

97. The money belongs to Cryo Generation in equity and good conscience.

98. As set forth more fully below, Cryo Generation's damages include, but are not limited to actual damages, court costs, and pre- and post-judgment interest.

**K.      Application for Temporary Restraining Order**

99. The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

100. Pursuant to § 65.011(1), (3), and (5) of the Texas Civil Practice & Remedies Code, Cryo Generation seeks a temporary restraining order concerning Cryo Centers of America's

ongoing efforts and activities to sell the Cryo T-Shock units in violation of the Exclusive Distribution Agreement. Such illegal and unlawful conduct is causing Cryo Generation is irreparably harming Cryo Generation's ability to sell the Cryo T-Shock unit in the United States and Canada (thus causing Cryo Generation to lose additional business), serve as the exclusive sales and distribution entity for the Cryo T-Shock in the United States and Canada, and prevent other entities from attempting to sell or distribute the Cryo T-Shock in the United States or Canada. Accordingly, Cryo Generation seeks a temporary restraining order to prevent Cryo Centers of America from selling any Cryo T-Shock units in the United States or Canada and from selling, advertising, or otherwise distributing any materials which contain the Cryo Generation trademark.

101.    There is an immediate, imminent, and real threat of irreparable harm and injury in that Cryo Generation has and will continue to be damaged and injured by Cryo Centers of America's conduct, including but not limited to a loss of value in Cryo Generation's business and its trademark. Additionally, Cryo Centers of America's illegal and unlawful conduct encourages other entities to similarly sell Cryo T-Shock units in violation of the Exclusive Distribution Agreement, thus causing further harm and damage to Cryo Generation which is not easily calculable. Accordingly, immediate and irreparable injury, loss, or damage will result to Cryo Generation before notice can be served and a hearing had thereon.

102.    Cryo Centers of America has already shown a willingness to continue to unlawfully sell the Cryo T-Shock units in the United States and/or Canada, harm Cryo Generation's business, jeopardize the excellent reputation Cryo Generation has developed throughout the business community, and misappropriate the Cryo Generation trademark.

103.    Unless Cryo Centers of America is ordered to immediately refrain from selling Cryo T-Shock units within the United States and Canada and infringing on Cryo Generation's

trademark, Cryo Generation will be seriously and irreparably harmed given that Cryo Generation's reputation, its Cryo Generation trademark, and its role as the exclusive seller and distributer of the Cryo T-Shock unit in the United States and Canada are essential to Cryo Generation's operations. Cryo Generation will not have an adequate remedy at law to compensate it for the harm of these losses if the Court does not intervene. Moreover, it will be very difficult to calculate the damage sustained by Cryo Generation if, because of Cryo Centers of America's unlawful conduct, other entities also ignore the Exclusive Distribution Agreement and sell the Cryo T-Shock units within the United States and Canada.

104.    Cryo Generation will demonstrate a probable right to the relief sought herein because, among other reasons, Cryo Centers of America acknowledged it is selling the Cryo T-Shock units in the United States and Canada and further acknowledged its intent to continue this unlawful practice. Furthermore, the Cryo Generation protocol treatment manual distributed and/or advertised by Cryo Centers of America contains the Cryo Generation trademark on every page.

105.    In order to preserve the status quo until final hearing, Cryo Centers of America should be cited to show cause why they should not be enjoined from continuing the wrongful conduct described in this pleading.

106.    Cryo Generation is willing to post bond as provided by law and the Court.

**L.     Application for Temporary and Permanent Injunction**

107.    The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

108.    Pursuant to § 65.011(1), (3), and (5) of the Texas Civil Practice & Remedies Code, Cryo Generation seeks a temporary and permanent injunction concerning Cryo Centers of America's ongoing efforts and activities to sell the Cryo T-Shock units in violation of the

Exclusive Distribution Agreement. Such illegal and unlawful conduct is causing Cryo Generation is irreparably harming Cryo Generation's ability to sell the Cryo T-Shock unit in the United States and Canada (thus causing Cryo Generation to lose additional business), serve as the exclusive sales and distribution entity for the Cryo T-Shock in the United States and Canada, and prevent other entities from attempting to sell or distribute the Cryo T-Shock in the United States or Canada. Accordingly, Cryo Generation seeks a temporary and permanent injunction to prevent Cryo Centers of America from selling any Cryo T-Shock units in the United States or Canada and from selling, advertising, or otherwise distributing any materials which contain the Cryo Generation trademark.

109.    There is an immediate, imminent, and real threat of irreparable harm and injury in that Cryo Generation has and will continue to be damaged and injured by Cryo Centers of America's conduct, including but not limited to a loss of value in Cryo Generation's business and its trademark. Additionally, Cryo Centers of America's illegal and unlawful conduct encourages other entities to similarly sell Cryo T-Shock units in violation of the Exclusive Distribution Agreement, thus causing further harm and damage to Cryo Generation which is not easily calculable. Accordingly, immediate and irreparable injury, loss, or damage will result to Cryo Generation before notice can be served and a hearing had thereon.

110.    Cryo Centers of America has already shown a willingness to continue to unlawfully sell the Cryo T-Shock units in the United States and/or Canada, harm Cryo Generation's business, jeopardize the excellent reputation Cryo Generation has developed throughout the business community, and misappropriate the Cryo Generation trademark.

111.    Unless Cryo Centers of America is ordered to immediately refrain from selling Cryo T-Shock units within the United States and Canada and infringing on Cryo Generation's

trademark, Cryo Generation will be seriously and irreparably harmed given that Cryo Generation's reputation, its Cryo Generation trademark, and its role as the exclusive seller and distributer of the Cryo T-Shock unit in the United States and Canada are essential to Cryo Generation's operations. Cryo Generation will not have an adequate remedy at law to compensate it for the harm of these losses if the Court does not intervene. Moreover, it will be very difficult to calculate the damage sustained by Cryo Generation if, because of Cryo Centers of America's unlawful conduct, other entities also ignore the Exclusive Distribution Agreement and sell the Cryo T-Shock units within the United States and Canada.

112.    Cryo Generation will demonstrate a probable right to the relief sought herein because, among other reasons, Cryo Centers of America acknowledged it is selling the Cryo T-Shock units in the United States and Canada and further acknowledged its intent to continue this unlawful practice. Furthermore, the Cryo Generation protocol treatment manual distributed and/or advertised by Cryo Centers of America contains the Cryo Generation trademark on every page.

113.    In order to preserve the status quo until a final trial on this matter, Cryo Centers of America should be cited to show cause why they should not be enjoined from continuing the wrongful conduct described in this pleading.

114.    Cryo Generation is willing to post bond as provided by law and the Court.

## VI.
### ACTUAL, CONSEQUENTIAL, AND EXEMPLARY DAMAGES

115.    As a consequence of the wrongful acts described above, Cryo Generation has suffered actual and consequential damages exceeding the minimum jurisdictional limits of this Court. Cryo Generation pleads both general and specific damages on all causes of action. Cryo Generation also requests its reasonable attorneys' fees in accordance with 15 U.S.C. § 1117(a) and Tex. Bus. & Com. Code §§ 16.103(c) and 16.104(c). Cryo Generation seeks all investigative and

court costs from Cryo Centers of America as well as all applicable pre- and post-judgment interest.

116.    Moreover, Cryo Generation pleads exemplary damages on its causes of action for tortious interference with an existing contract and fraud by nondisclosure. Defendants committed the aforementioned acts with the kind of willfulness, wantonness, fraud and/or malice for which the law allows the imposition of exemplary damages, for which Cryo Generation sues.

## VII.
### CONDITIONS PRECEDENT

117.    All conditions precedent to Plaintiff's claims for relief, if any, have occurred or have been performed.

## VIII.
### JURY DEMAND

118.    Plaintiff demands a trial by jury on all claims and issues so triable.

## IX.
### PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Cryo Generation prays for the following relief:

(a)     A temporary restraining order[10]:

   (i)     Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from selling, advertising, distributing, assigning, moving, using, or seeking to sell, advertise, distribute, assign, move, or use any Cryo T-Shock unit obtained outside the United States and in the possession, custody, or control of Cryo Centers of America;

   (ii)    Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from selling, sending, advertising, distributing, assigning, using, or seeking to sell, send, advertise, distribute, assign, or use any Cryo Generation's

---

[10] A true and correct copy of the proposed Temporary Restraining Order is attached hereto as **Exhibit "B"** and incorporated herein by reference.

trademark;

(iii)    Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from directly or indirectly interfering with Cryo Generation's Exclusive Distribution Agreement with Elettronica Pagani;

(iv)    Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from directly or indirectly interfering with Cryo Generation's exclusive right to distribute and sell the Cryo T-Shock unit in the United States and Canada;

(v)    Ordering Cryo Centers of America to immediately return to Cryo Generation all data, information, documents, and/or communications containing the Cryo Generation trademark in Cryo Centers of America's possession, custody, or control;

(vi)    Ordering Cryo Centers of America to immediately preserve any and all documents and communications relating to this matter, Cryo Generation, Elettronica Pagani, the Cryo T-Shock unit, the Cryo Generation trademark, and the Exclusive Distribution Agreement between Cryo Generation and Elettronica Pagani in Cryo Centers of America's possession, custody, or control;

(b)    A temporary injunction (after Cryo Centers of America is cited to appear and show cause, and after hearing):

(i)    Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from selling, advertising, distributing, assigning, moving, using, or seeking to sell, advertise, distribute, assign, move, or use any Cryo T-Shock unit obtained outside the United States and in the possession, custody, or control of Cryo Centers of America;

(ii)    Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from selling, sending, advertising, distributing, assigning, using, or seeking to sell, send, advertise, distribute, assign, or use any Cryo Generation's trademark;

(iii)    Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from directly or indirectly

interfering with Cryo Generation's Exclusive Distribution Agreement with Elettronica Pagani;

(iv)   Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from directly or indirectly interfering with Cryo Generation's exclusive right to distribute and sell the Cryo T-Shock unit in the United States and Canada;

(v)   Ordering Cryo Centers of America to immediately return to Cryo Generation all data, information, documents, and/or communications containing the Cryo Generation trademark in Cryo Centers of America's possession, custody, or control;

(vi)   Ordering Cryo Centers of America to immediately preserve any and all documents and communications relating to this matter, Cryo Generation, Elettronica Pagani, the Cryo T-Shock unit, the Cryo Generation trademark, and the Exclusive Distribution Agreement between Cryo Generation and Elettronica Pagani in Cryo Centers of America's possession, custody, or control;

(c)   Upon final trial, judgment against Cryo Centers of America, and a permanent injunction:

(i)   Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from selling, advertising, distributing, assigning, moving, using, or seeking to sell, advertise, distribute, assign, move, or use any Cryo T-Shock unit obtained outside the United States and in the possession, custody, or control of Cryo Centers of America;

(ii)   Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from selling, sending, advertising, distributing, assigning, using, or seeking to sell, send, advertise, distribute, assign, or use any Cryo Generation's trademark;

(iii)   Enjoining Cryo Centers of America or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them from directly or indirectly interfering with Cryo Generation's Exclusive Distribution Agreement with Elettronica Pagani;

(iv)   Enjoining Cryo Centers of America or any of its officers, agents,

servants, employees, attorneys, representatives, or any persons in active concert or participation with them from directly or indirectly interfering with Cryo Generation's exclusive right to distribute and sell the Cryo T-Shock unit in the United States and Canada; and

(v)    Ordering Cryo Centers of America to immediately return to Cryo Generation all data, information, documents, and/or communications containing the Cryo Generation trademark in Cryo Centers of America's possession, custody, or control;

(d)    Actual damages against Cryo Centers of America in an amount to be proven at trial;

(e)    Reasonable and necessary attorneys' fees and court costs in the trial court and all subsequent appeals;

(f)    Prejudgment and post-judgment interest at the highest lawful rates; and

(g)    All such other relief to which Cryo Generation may show itself to be justly entitled.

Respectfully submitted,

By:    */s/ Joshua M. Sandler*
Alan Dabdoub
Texas State Bar No. 24056836
adabdoub@lynnllp.com
Joshua M. Sandler
Texas State Bar No. 24053680
jsandler@lynnllp.com
**LYNN PINKER COX HURST, LLP**
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
(214) 981-3800 – phone
(214) 981-3829 – fax

**ATTORNEYS FOR PLAINTIFF CRYO GENERATION, INC.**

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Collin County Local Rule 2.4, I certify that I have or will notify counsel of record for Cryo Centers of America, LLC via email and provide it a copy of this Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction and all exhibits thereto including but not limited to the proposed Temporary Restraining Order at least two (2) hours before any hearing on Plaintiff's request for injunctive relief.

*/s/ Joshua M. Sandler*
Joshua M. Sandler

# Exhibit "A"

CAUSE NO. _____

| | | |
|---|---|---|
| CRYO GENERATION, INC., | § | THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | \_\_\_\_\_ JUDICIAL DISTRICT |
| | § | |
| CRYO CENTERS OF AMERICA, LLC, | § | |
| | § | |
| *Defendant.* | § | COLLIN COUNTY, TEXAS |

## DECLARATION OF STANLEY KAPICA

1.      My name is Stanley John Kapica. My date of birth is June 10, 1958 and my address is 200 Mamaroneck Avenue, Suite 502, White Plains, New York 10607, United States of America. I am the President of Plaintiff of Cryo Generation, Inc. ("Cryo Generation").

2.      I declare under penalty of perjury that the foregoing is true and correct.

3.      Cryo Generation distributes best-in-breed cryotherapy equipment to clients across the United States. Cryotherapy is the therapeutic use of cold air. Various cryotherapy products exist such as cryotherapy chambers, which are devices that surround the body with hyper-cold air for therapeutic purposes. Elettronica Pagani is the owner and manufacturer of the HC Cryo T-Shock ("Cryo T-Shock"), a device which uses state-of-the-art thermography and cryotherapy to treat cellulite and effectuate fat removal from the body.

4.      On September 12, 2017, Elettronica Pagani entered into an Exclusive Distribution Agreement with Cryo Generation wherein Elettronica Pagani granted to Cryo Generation the "*exclusive right to distribute the [Cryo T-Shock] in the United States of America and Canada*" and that further, Cryo Generation will "*undertake the distribution and sale of [the Cryo T-Shock]*

*in [the United States and Canada]."*[1]

> **DISTRIBUTOR**, wishes to enter into this Agreement with **PAGANI** whereby **DISTRIBUTOR** will undertake the distribution and sale of Product in the Territory on the terms and subject to the conditions contained herein;
> - **Territory**: NORTH AMERICA – U.S.A. and CANADA
> **PAGANI** hereby grants to **DISTRIBUTOR** and **DISTRIBUTOR** hereby accepts from **PAGANI** the exclusive right to distribute the Product in the Territory, upon and subject to all terms and conditions set forth in this Agreement

[2]

5.     Therefore, Cryo Generation's business model, including its means for generating profits, is heavily dependent on its status as the only entity in the United States and Canada with the exclusive right to sell and distribute the Cryo T-Shock. Relatedly, the Exclusive Distribution Agreement is much diminished and largely irrelevant if another entity sells the Cryo T-Shock to consumers in the United States or Canada without Cryo Generation's express permission or consent. Such illegal conduct also opens the floodgates for more entities to inflict further monetary harm on Cryo Generation by ignoring that Cryo T-Shock's manufacturer, Pagani, selected Cryo Generation—and only Cryo Generation—as the exclusive sales and distribution entity for the Cryo T-Shock in the United States and Canada.

6.     By way of information and belief, Cryo Centers of America knows that Cryo Generation is the only entity that may sell or distribute the Cryo T-Shock in the United States or Canada. Accordingly and because of the Exclusive Distribution Agreement, Cryo Centers of America did not originally seek to sell or distribute the Cryo T-Shock in the United States or Canada. Instead, it referred potential customers to an independent contractor of Cryo Generation

---

[1] *See* "Exclusive Distribution Agreement Between Elettronica PAGANI srl, manufacturing electronic devices and having factory in Paderno Dugnano, Milano, Italy and CRYO GENERATION INC., distributing Aesthetics devices and products having facility in 23 old rt 100 Katonah, NY 10536, USA" (the "Exclusive Distribution Agreement"), a true and correct copy of which is attached hereto as **Exhibit "A-1"** and incorporated herein by reference (emphasis added).

[2] *Id.*

in return for commission payments from that independent contractor if the sale materialized.[3]

7.      However, based on a written admission from Tyler Slater, a self-described "Kush & Cryo Entrepreneur" and co-owner of Cryo Centers of America, when Cryo Centers of America believed it did not receive the correct commission amount for its referrals to Cryo Generation, Cryo Centers of America made a complete end run around Cryo Generation by obtaining Cryo T-Shock units from outside the United States and Canada and wrongfully selling the units in the United States and Canada.[4]

8.      In the course of its unauthorized and unlawful acts, Cryo Centers of America represented to potential purchasers and purchasers that the Cryo T-Shock contains a manufacturer's warranty backed by Elettronica Pagani. However, Cryo Centers of America did not disclose (and is not disclosing) to any potential purchasers or purchasers that Elettronica Pagani will not honor any warranty on a Cryo T-Shock unit sold in violation of the Exclusive Distribution Agreement (i.e., any Cryo T-Shock not sold or distributed by Cryo Generation in the United States or Canada). I learned, firsthand, from Elettronica Pagani that Elettronica Pagani will not honor any warranty on a Cryo T-Shock unit sold in violation of the Exclusive Distribution Agreement between Elettronica Pagani and Cryo Generation.

9.      Moreover, by way of information and belief, Cryo Centers of America distributed to Cryo T-Shock customers and potential customers a Cryo Generation protocol treatment manual which contains the Cryo Generation trademark on every page.[5]

---

[3] Notably, Cryo Generation is not part of any arrangement that the independent contractor had with Cryo Centers of America.

[4] *See* Email from Tyler Slater to Elettronica Pagani (Sept. 11, 2018), a true and correct copy of which is attached hereto as **Exhibit "A-2"** and incorporated herein by reference.

[5] *See* Pagani Cryo T-Shock Treatment Protocols, a true and correct copy of which is attached hereto as **Exhibit "A-3"** and incorporated herein by reference.



6

Cryo Centers of America willfully and knowingly used the Cryo Generation trademark in commerce with the sale of products without the consent of Cryo Generation.

10.     After learning of Cryo Centers of America's unlawful and illegal conduct, both Elettronica Pagani and Cryo Generation sent communications to Cryo Centers of America demanding that it immediately cease and desist.[7] But Mr. Slater, on behalf of Cryo Centers of America, ignored this demand and responded, "I will continue to sell the units that I have already purchased."[8]

11.     Subsequent evidence obtained by Cryo Generation indicates that Cryo Centers of America continues its ongoing attempts to illegally and wrongfully sell the Cryo T-Shock in the United States and Canada:

---

[6] *Id.*

[7] *See* Email from Grassi Gianluca to info@cryocentersofamerica.com (Sept. 11, 2018), a true and correct copy of which is attached hereto as **Exhibit "A-4"** and incorporated herein by reference; *see* Email from Stan Kapica to Tyler Stewart (Sept. 11, 2018), a true and correct copy of which is attached hereto as **Exhibit "A-5"** and incorporated herein by reference.

[8] Email from Tyler Slater to Elettronica Pagani (Sept. 11, 2018) (*see* **Exhibit "A-2"**).







12.     Indeed, Cryo Generation very recently learned that Cryo Centers of America is seeking to finalize the sale of two Cryo T-Shock units in Colorado Springs, Colorado and that the sale is imminent.

13.     As a proximate result of Cryo Centers of America's actions, Cryo Generation has suffered, and will continue to suffer, irreparable harm to its trademark, its goodwill, and its ability to sell the Cryo T-Shock unit in the United States and Canada (thus causing Cryo Generation to lose additional business), serve as the exclusive sales and distribution entity for the Cryo T-Shock in the United States and Canada, and prevent other entities from attempting to sell or distribute the Cryo T-Shock in the United States or Canada. Additionally, Cryo Centers of America already stated it will continue to unlawfully sell the Cryo T-Shock in the United States and Canada.

Executed in Westchester County, State of New York, on the 1st day of October, 2018.

Stanley Kapica

# Exhibit "A-1"

PAGANI

**Milan, 19/12/2017**

## Exclusive Distribution Agreement
### Between
### Elettronica PAGANI srl, manufacturing electronic devices and having factory in Paderno Dugnano, Milano, Italy
### And
### CRYO GENERATION INC., distributing Aesthetics devices and products having facility in 23 old rt 100 Katonah, NY 10536, USA.

**Elettronica PAGANI** is the owner and manufacturer of the following Product:

**HC CRYO T- SHOCK, aesthetic version**

**Compact cryotherapy and shock diathermy generator for Wellness and Aesthetics**

- Cryotherapy hyper stimulates the skin and tissue, greatly speeding up all cellular activities.

- Cryotherapy has a proven high efficacy in the aesthetics for slimming and body "sculpting"

- The results that cryotherapy achieves also applies to the skin. It immediately improves appearance by tightening skin and causing a healthy glow.

- Multiple sessions result in increased collagen and elastin.

- Cryotherapy relaxes facial muscles and larger targeted muscles.

- Cryotherapy causes blood vessels and capillaries to expand by up to 400%. This greatly improves the skins permeability and consequential product absorption ability.

- Offering cryotherapy comes at minimal to no financial risk due to low breakeven requirements.

**Treatment types**

- Cryofacials are offered by performing cryotherapy on the face with or without product application.

- Cryotherapy and shock diathermy is used to treat muscles.

- Cryotherapy is applied for deep muscle relaxation.

- Cryotherapy is performing fat removal and skin smoothing

**Main features**:

- Universal power supply for 110 and 230 V, 50/60 Hz

- Electric Class 1, Type B

- Power consumption: max. 300 VA

- Cold temperature: max – 18°C

ELETTRONICA PAGANI SRL – Via De Nicola 4/d – 20037 Paderno D. – Milano – Italia –
Tel +39.02.99043903 – fax +39.02.99045149 - e-mail: info@elettronicapagani.it – www.elettronicapagani.com
Trib. Monza Reg. 32589 – CCIAA Milano 1203712 – PI 00891100964 - CF 08053590157

PAGANI

- Hot temperature: max. 41°C

- Manual hand-piece with radiating area of 50 mm  large; adapter with Magnetic Coupling System for reducing radiating area at 29 mm large for facial applications

- Highest performances thanks to real-time temperature control with sensor attesting skin's temperature

- Standard accessories: main unit, hand-piece with detachable connector, 29 mm adapter for treating small parts and doing facial applications,  power cord with "shucko" plug, cryo-gel 1 Kg, operating manual

**DISTRIBUTOR,** wishes to enter into this Agreement with **PAGANI** whereby **DISTRIBUTOR** will undertake the distribution and sale of Product in the Territory on the terms and subject to the conditions contained herein;

- Territory: NORTH AMERICA – U.S.A. and CANADA

**PAGANI** hereby grants to **DISTRIBUTOR** and **DISTRIBUTOR** hereby accepts from **PAGANI**  the exclusive right to distribute the Product in the Territory, upon and subject to all terms and conditions set forth in this Agreement

**PRODUCT** belongs to **PAGANI**, its property is full and this agreement cannot transfer any right concerning the product which shall continue to belong to **PAGANI**.

The Product will be marketed and sold by **DISTRIBUTOR** solely under the Trade-marks. **DISTRIBUTOR** will not alter, obscure, remove, cancel or otherwise interfere with any markings and other indications of origin, which may be placed on Product.  **DISTRIBUTOR** acknowledges that **PAGANI** is the exclusive owner of the Trade-marks and **DISTRIBUTOR** has no right

- Main conditions:
  1. **DISTRIBUTOR** is maintaining a sales network specialised and interested in promoting selling the product. Sales network has been instructed for promoting/selling the **PRODUCT**. **DISTRIBUTOR** shall use its best efforts, at its own expense, to market, promote and sell the **PRODUCT** in the Territory
  2. **DISTRIBUTOR** is maintaining a technical department for doing service and maintenance. Technical department has got all the information and instruments needed for doing the relevant activity.
  3. **DISTRIBUTOR** is keeping procedures granting traceability of all the installed items and **DISTRIBUTOR** is confirming that is willing to inform **PAGANI**, for any justified reason, about address of each customer using the **PRODUCT**.
  4. **DISTRIBUTOR** is able to install and to train the personnel using the **PRODUCT**.
  5. **PAGANI** guarantees that the quality of Product supplied under this Agreement shall meet usual standards of safety and functionality
  6. **DISTRIBUTOR** shall, promptly following receipt of the Product, examine such **PRODUCT** and satisfy itself that it meets its requirements.  Any claim in respect to short-shipment or for defective **PRODUCT** must be made in writing by **DISTRIBUTOR** to **PAGANI** within fourteen (14) days ("Investigation Period") of the date such Product arrived at Distributor's warehouse, and such short-shipment or defect must not have been caused while the Product was in transport from **PAGANI's** warehouse to **DISTRIBUTOR's** warehouse or while in storage by or on behalf of **DISTRIBUTOR**. While the product could be not repaired from **DISTRIBUTOR** with its knowledge and parts, **PAGANI** shall replace the unit itself with a new

ELETTRONICA PAGANI SRL – Via De Nicola 4/d – 20037 Paderno D. – Milano – Italia –
Tel +39.02.99043903 – fax +39.02.99045149 - e-mail: info@elettronicapagani.it – www.elettronicapagani.com
Trib. Monza Reg. 32589 – CCIAA Milano 1203712 – PI 00891140964 - CF 08053590157

**Page 37 of 65**

unit at the receiving of the faulty unit back. Transport of the faulty unit is at **DISTRIBUTOR** charge. Otherwise, replacement and transport of the new unit shall be at **PAGANI** charge.

7. **PRODUCT** is covered from **2 years** commercial **warranty**. **DISTRIBUTOR** shall be informed about all possible faults and main features of the unit for being able to do maintenance and after sales service. **DISTRIBUTOR** shall keep a technical department and spare parts for performing service. During warranty period, **DISTRIBUTOR** shall **inform PAGANI** about any faulty unit and if spare part is needed to be replaced under warranty, **DISTRIBUTOR** shall use firstly the parts from its stock and **PAGANI** shall replace the damaged part to be used for the stock of **DISTRIBUTOR** free of charge at the receipt of the damaged part and further to the inspection of its technical staff. All fees of service and transport shall be at **DISTRIBUTOR** charge. For all damages due to negligence, not proper use or bad maintenance, **PAGANI** shall inform **DISTRIBUTOR** by writing and, upon the acceptation from **DISTRIBUTOR**,  part shall be invoiced at the net price reserved to **DISTRIBUTOR**. Warranty doesn't include consumable parts and all other parts mentioned into the operating manual, such as connectors, power cords, leads, wheels, etc.

8. **DISTRIBUTOR** shall keep a minimum stock of spare parts and accessories needed for performing service without any delay

9. **DISTRIBUTOR** shall not use or copy, or permit the use or copy of any of the Confidential Information, directly or indirectly, for any purpose other than the discharge of its duties and obligations arising from its appointment as a **DISTRIBUTOR** hereunder and only in the best interests of **PAGANI**. **DISTRIBUTOR** shall maintain the absolute confidentiality of the Confidential Information and that it will not (without the prior written consent of **PAGANI**) either individually, or in partnership or jointly, or in conjunction with any other Person, as principal, agent, shareholder, or in any manner whatsoever, disclose, reveal, release, utilize, sell, assign, supply, or transfer to any person at any time, any of the Confidential Information, except to the extent necessary to discharge its duties and obligations relating to its appointment hereunder and only in the best interests of **PAGANI**;

10. **PAGANI** and **DISTRIBUTOR** agree to achieve a minimum annual quantity performance of **50 units** at the end of **Year 2018** and **20% more** at the end of **Year 2019**.

11. Validity of the agreement:  up to the end of Year 2019.  The initial term of this Agreement shall come into effect on the Effective Date and, unless terminated earlier in accordance with the terms of this Agreement, shall continue in full force and effect for a period of 2 Years with renewal negotiated 60 days before the expiration date.

12. Prices including the unit with standard accessories, ex-works **PAGANI** warehouse are as follows:     a. Desk-top version: Euro 4.950,00
           b. Wheeled frame version: Euro 5.335,00

    If DISTRIBUTOR is achieving the target before the end of the Year, PAGANI shall grant a **further 7% discount** over all orders up to the end of the Year of competence.

13. Freight fees:  **DISTRIBUTOR** shall decide about transport modality, courier to be used and all fees shall be paid from **DISTRIBUTOR**.  PAGANI is not responsible about transport risks and fees.

14. Delivery time: from 3 to 6 weeks from payment receipt, depending on quantity of each order.

ELETTRONICA PAGANI SRL – Via De Nicola 4/d – 20037 Paderno D. – Milano – Italia –
Tel +39.02.99043903 – fax +39.02.99045149 - e-mail: info@elettronicapagani.it – www.elettronicapagani.com
Trib. Monza Reg. 32589 – CCIAA Milano 1203712 – PI 00891140964 - CF 08053590157     **Page 38 of 65**

PAGANI

15. Payment terms: L/C or prepaid
16. Currency: Euro
17. First order: **DISTRIBUTOR** shall place a firm written order for confirming validity of this agreement for a minimum quantity of 10 units;
18. After the first order, **DISTRIBUTOR** may issue each single order for the desired quantity of PRODUCT by referring to its items code, trade-mark and price. PAGANI shall send an order confirmation /pro-forma invoice mentioning expected delivery time. The order shall be executed at the receipt of payment.

for ELETTRONICA PAGANI SRL
MAFALDA DOSOLI - PRESIDENT

for CRYO-GENERATION INC.
STAN KAPICA – PRESIDENT

ELETTRONICA PAGANI SRL

*stan kapica*

ELETTRONICA PAGANI SRL – Via De Nicola 4/d – 20037 Paderno D. – Milano – Italia –
Tel +39.02.99043903 – fax +39.02.99045149 - e-mail: info@elettronicapagani.it – www.elettronicapagani.com
Trib. Monza Reg. 32589 - CCIAA Milano 1203712 - PI 00891140964 - CF 08053590157

**Page 39 of 65**

# Exhibit "A-2"



Cryo Generation <stan@cryo-generation.com>

## I: CRYO T-SHOCK

**Uff. Commerciale Elettronica Pagani** <uc@elettronicapagani.it>     Tue, Sep 11, 2018 at 9:12 AM
To: Cryo Generation <stan@cryo-generation.com>

**Da:** Cryo Centers of America - Allen [mailto:info@cryocentersofamerica.com]
**Inviato:** martedì 11 settembre 2018 14:57
**A:** Uff. Commerciale Elettronica Pagani
**Oggetto:** Re: CRYO T-SHOCK

To whom it may concern,

Thank you for reaching out to Cryo Centers Of America. I'm a little confused and don't really understand your concern in regards to the Cryo T Shock.

My company, Cryo Centers Of America is the fastest growing cryotherapy company in the world, and most of the Cryo T Shocks that Stan Kapica has been selling (unknowingly) is bc of our effort.

See, Stan Kapica hired a lady named Stephanie Saladino who reach out to us to help sell the Cryo T Shock units for Stan. We have been selling units for you all and Stan for the last 6 months. That's were the majority of your Cryo T Shock  sales have came from. We sell them and then we have been getting a commission.

So after we sold a-couple units and we  noticed that we weren't receiving the correct commission from Stephanie (that we agreed upon) for selling the product. I then decided to reach out to find another source.

Unfortunately, I bought these units legally already from overseas (not in the USA). Since I already have the units and own them. I'm legally able to resell them. In the United States, anyone can sell any product if it has been already purchased legally.

https://smallbiztrends.com/2013/03/resale-rights-you-bought-own.html

I will continue to sell the units that I have already purchased. If you have any questions or concerns please reach back out to me and I can arrange a time for you all to discuss with our in-house legal counsel.


Best Regards,


Tyler Slater

214.383.9998

www.FeelTheFreeze.com

# Exhibit "A-3"





# Pagani Cryo T-Shock
# Treatment Protocols





C CRYO T-SHOCK is a compact cryotherapy and shock diathermy enerator for Wellness and Aesthetics

- Cryotherapy hyper stimulates the skin and tissue, greatly speeding up all cellular activities.

- Cryotherapy has a proven high efficacy in the aesthetics  for slimming and body "sculpting"

- The results that cryotherapy achieves also applies to the skin. It immediately improves appearance by tightening skin and causing a healthy glow.

- Multiple sessions result in increased collagen and elastin. Cryotherapy relaxes facial muscles and larger targeted muscles.

- Cryotherapy causes blood vessels and capillaries to expand by up to 400%. This greatly improves the skins permeability and consequential product absorption ability. Offering cryotherapy comes at minimal to no financial risk due to low breakeven requirements.

# Pagani Cryo T-Shock Treatment Protocols

| Program | Frequency | Sessions | Complimentary | Complimentary |
|---|---|---|---|---|
| Face Lifting | 2x/week | 4 to 6 | | Maintenance 2x |
| Anti-Aging | 2x/week | 4 to 6 | Cryo Facial | Maintenance 2x |
| Cleaning | 2x/week | 3 to 5 | | |
| Couperose (red skin) | 1x/week | 4 to 6 | | |
| Delcollette (saggy neck) | 1x/week | 5 to 10 | Cryo Facial | Maintenance 2x |
| Double Chin | 2x/week | 4 to 6 | Cryo Facial | Maintenance 2x |
| Wrinkles | 2x/week | 5 to 8 | Cryo Facial | Maintenance 2x |

eck



# Pagani Cryo T-Shock Treatment Protocols

| Part | Program | Frequency | Sessions | Complimentary | Comments |
|------|---------|-----------|----------|---------------|----------|
| Body | Fat Removal | 1x every 2 weeks | 6 to 10 | WBC following session | One body part at a time, allow for lymphatic d... |
| | Firming | 1x/week | 4 to 6 | WBC following | Maintenance 2x/mon... |
| | Shaping / Definition | 2x/week | 4 to 6 | | Maintenance 2x/mon... |
| | Drainage | 2x/week | 4 to 6 | | |
| | Slimming | 1x/week | 3 to 5 | | |
| | Aqueous Cellulite | 1x/week | 5 to 8 | WBC following | |
| | Adipose Cellulite | 1x/week | 5 to 10 | WBC following | Maintenance 2x/mon... |
| | Fibrous Cellulite | 1x/week | 5 to 10 | WBC following | Maintenance 2x/mon... |
| | Muscle Relaxing | 1x/week | 3 to 5 | | |



# Combining Cryo T Shock Treatments With Other Services

## With WBC

It's beneficial to combine whole body cryotherapy with body firming, cellulite reduction and fat freezing as it will accelerate the effectiveness of the treatment. The T Shock treatment triggers the fluids that bind fat cells together to crystallize. This crystallization destroys the fat cells and releases the bonds that hold them together. The sub freezing temperatures of whole body cryotherapy following the T Shock session will accelerate this process.

Here's a sequential protocol:

Cryo T Shock Fat Freeze or Cellulite treatment

20-30 minutes in Norma Tech boots to facilitate lymphatic drainage

One WBC treatment



# Combining Cryo T Shock Treatments With Other Services

## With CryoFacial

Incorporating the Cryo T Shock facial protocols 2x/week with 2-3x/week Cryo Facial will greatly accelerate results.   Visible improvement in skin tone is evident from a single Cryo T Shock facial.

To prevent drying the skin, each treatment should be followed by the application of an anti-aging moisturizer.



# Cellulite Types

| Stage | Type of Cellulite | Comments |
|---|---|---|
| I | Aqueous Cellulite | This type is caused by water retention due to poor blood and lymphatic circulation. It is important to drain toxins and reactivate circulatory exchanges. |
| II | Adipose Cellulite | This type of cellulite is often associated with excess weight. It is necessary to stimulate natural fat release. |
| III | Fibrous Cellulite | This type is harder to get rid of because it has been present for a time, is compact and often painful. The tissues must first be softened before fibrous cellulite can be removed. |

The Cryo T Shock stimulates the skin and fatty tissue to soften them and make them less fibrous. At the same time, this stimulation helps to release fat and to activate blood and lymphatic circulation. Simultaneously, the hot/cold action of the head shocks the cells to stimulate natural fat release and firms skin to give it back its tonality and a dimple-free aspect.

# What Is Cellulite?

Cellulite is a popular term to describe fat deposits under the skin. It is characterized by a dimpled or orange-peel appearance due to structural changes underneath the skin's top layer. Cellulite is a perfectly normal and harmless condition, however, it is a cosmetic concern of many people.

Cellulite is a normal occurrence resulting from uneven fatty deposits, mostly below the waistline. In women, fat is arranged in large chambers underneath a fairly thin layer of skin. These chambers are separated by columns of collagen fibers. In obese (overweight) people, too much fat is being stuffed into these chambers, causing the pitting and bulging of the skin. In addition, as women age, the fibers shrink and thicken, pulling the skin downward. This results in a quilt-like appearance on the skin surface, especially in areas such as the buttocks, thighs, or hips. Most women develop cellulite as they age, regardless of their race. According to some studies, as many as 95% of women over age 30 develop some form of cellulite in their body

Female hormones (estrogen, and to a lesser extent, progesterone) play important roles in the formation of cellulite. Estrogen stimulates the storage of fat, which is needed for menstruation, pregnancy, and lactation. In addition, during the later phases of pregnancy, estrogen also causes the breakdown of collagen fibers to relax the cervix, making it possible for a woman to deliver her baby. This collagen breakdown sets the stage for the formation of cellulite. Progesterone may also contribute to the cellulite problem by weakening veins and causing water retention and weight gain.



# Exhibit "A-4"

**Da:** Uff. Commerciale Elettronica Pagani [mailto:uc@elettronicapagani.it]
**Inviato:** martedì 11 settembre 2018 08:53
**A:** 'info@cryocentersofamerica.com'
**Oggetto:** CRYO T-SHOCK
**Priorità:** Alta

Dear Sirs,

we learn that you are offering our CTYO T-SHOCK. Who is your supplier?

We don't know you and we do not have any agreement with you. So, you cannot offer PAGANI's units.

You are required to remove immediately all images, features and offers concerning our CRYO T-SHOCK.

Regards

<image002.jpg>

Grassi Gianluca

www.paganihealthcare.it   www.cryotshock.it   www.tecartherapy.it

Tel. +39.02.99043903   Fax +39.02.99045149

# Exhibit "A-5"

**From:** Cryo Generation [mailto:stan@cryo-generation.com]
**Sent:** Tuesday, September 11, 2018 8:06 AM
**To:** info@cryocentersofamerica.com
**Cc:** Ufficio Commerciale-Elettronica Pagani <uc@elettronicapagani.it>
**Subject:** Fwd: I: CRYO T-SHOCK

Good Morning Tyler,

I will enforce my exclusivity in Dallas court promptly so lets both avoid your misrepresentation from escalating this issue to a higher level.   As you can see from Gianluca Grassi below, I am the exclusive North American distributor for all Pagani products.  You must suspend all activities related to representation of Pagani, their products, logos and likeness as well as any representation that you have anything to do with Cryo Generation, Inc. (I see that your misrepresentation includes presenting my Treatment Protocol Manual to clients as if you're associated with me).

Pagani will require that you disclose your suppliers or I ensure you that jointly we will pursue all actions necessary to completely shut down this illegal activity.

Sincerely,

Stan Kapica



Stan Kapica
President, Cryo Generation

914.552.5128  | stan@cryo-generation.com  | www.cryo-generation.com | 200 Mamaroneck Avenue, Suite 502, White Plains, NY 10607

# Exhibit "B"

CAUSE NO. _____

| | | |
|---|---|---|
| CRYO GENERATION, INC., | § | THE DISTRICT COURT |
| | § | |
| _Plaintiff_, | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| CRYO CENTERS OF AMERICA, LLC, | § | |
| | § | |
| _Defendant._ | § | COLLIN COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER

This Court, having heard the Application for Temporary Restraining Order (the "Application") filed by Plaintiff Cryo Generation, Inc. ("Cryo Generation") and all evidence and arguments of counsel with notice to Defendant Cryo Centers of America, LLC ("Cryo Centers of America"), is of the opinion that immediate and irreparable injury, loss, or damage will result to Cryo Generation in that Cryo Generation has and will continue to be damaged and injured by Cryo Centers of America's conduct, including but not limited to a loss of value to the Cryo Generation business, goodwill, and trademark as well as confusion in the marketplace by and among Cryo Generation's customers and encouragement to other entities to engage in such similar conduct as Cryo Centers of America. Accordingly, immediate and irreparable injury, loss, or damage will result to Cryo Generation before notice can be served and a hearing had thereon unless Cryo Centers of America is restrained. This finding is based on the following facts:

Plaintiff Cryo Generation distributes best-in-breed cryotherapy equipment to clients across the United States. Cryotherapy is the therapeutic use of cold air. Various cryotherapy products exist such as cryotherapy chambers, which are devices that surround the body with hyper-cold air for therapeutic purposes. Elettronica Pagani is the owner and manufacturer of the HC Cryo T-

Shock ("Cryo T-Shock"), a device which uses state-of-the-art thermography and cryotherapy to treat cellulite and effectuate fat removal from the body.

On September 12, 2017, Elettronica Pagani entered into an Exclusive Distribution Agreement with Cryo Generation wherein Elettronica Pagani granted to Cryo Generation the "*exclusive right to distribute the [Cryo T-Shock] in the United States of America and Canada*" and that further, Cryo Generation will "*undertake the distribution and sale of [the Cryo T-Shock] in [the United States and Canada].*"[1]

> DISTRIBUTOR, wishes to enter into this Agreement with **PAGANI** whereby **DISTRIBUTOR** will undertake the distribution and sale of Product in the Territory on the terms and subject to the conditions contained herein;
> - <u>Territory</u>: NORTH AMERICA – U.S.A. and CANADA
> PAGANI hereby grants to **DISTRIBUTOR** and **DISTRIBUTOR** hereby accepts from **PAGANI**  the exclusive right to distribute the Product in the Territory, upon and subject to all terms and conditions set forth in this Agreement [2]

Therefore, Cryo Generation's business model, including its means for generating profits, is heavily dependent on its status as the only entity in the United States and Canada with the exclusive right to sell and distribute the Cryo T-Shock. Relatedly, the Exclusive Distribution Agreement is much diminished and largely irrelevant if another entity sells the Cryo T-Shock to consumers in the United States or Canada without Cryo Generation's express permission or consent. Such illegal conduct also opens the floodgates for more entities to inflict further monetary harm on Cryo Generation by ignoring that Cryo T-Shock's manufacturer, Pagani, selected Cryo

---

[1] *See* "Exclusive Distribution Agreement Between Elettronica PAGANI srl, manufacturing electronic devices and having factory in Paderno Dugnano, Milano, Italy and CRYO GENERATION INC., distributing Aesthetics devices and products having facility in 23 old rt 100 Katonah, NY 10536, USA" (the "Exclusive Distribution Agreement"), a true and correct copy of which is attached as **Exhibit "A-1"** to Plaintiff's Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction ("Plaintiff's Original Petition").

[2] *Id.*

Generation—and only Cryo Generation—as the exclusive sales and distribution entity for the Cryo T-Shock in the United States and Canada.

By way of information and belief, Cryo Centers of America knows that Cryo Generation is the only entity that may sell or distribute the Cryo T-Shock in the United States or Canada. Accordingly and because of the Exclusive Distribution Agreement, Cryo Centers of America did not originally seek to sell or distribute the Cryo T-Shock in the United States or Canada. Instead, it referred potential customers to an independent contractor of Cryo Generation in return for commission payments from that independent contractor if the sale materialized.[3]

However, based on a written admission from Tyler Slater, a self-described "Kush & Cryo Entrepreneur" and co-owner of Cryo Centers of America, when Cryo Centers of America believed it did not receive the correct commission amount for its referrals to Cryo Generation, Cryo Centers of America made a complete end run around Cryo Generation by obtaining Cryo T-Shock units from outside the United States and Canada and wrongfully selling the units in the United States and Canada.[4]

In the course of its unauthorized and unlawful acts, Cryo Centers of America represented to potential purchasers and purchasers that the Cryo T-Shock contains a manufacturer's warranty backed by Elettronica Pagani. However, Cryo Centers of America did not disclose (and is not disclosing) to any potential purchasers or purchasers that Elettronica Pagani will not honor any warranty on a Cryo T-Shock unit sold in violation of the Exclusive Distribution Agreement (i.e., any Cryo T-Shock not sold or distributed by Cryo Generation in the United States or Canada).

---

[3] Notably, Cryo Generation is not part of any arrangement that the independent contractor had with Cryo Centers of America.

[4] Email from Tyler Slater to Elettronica Pagani (Sept. 11, 2018) (*see* **Exhibit "A-2"** of Plaintiff's Original Petition).

Moreover, by way of information and belief, Cryo Centers of America distributed to Cryo T-Shock customers and potential customers a Cryo Generation protocol treatment manual which contains the Cryo Generation trademark on every page.[5]



[6]

Cryo Centers of America willfully and knowingly used the Cryo Generation trademark in commerce with the sale of products without the consent of Cryo Generation.

After learning of Cryo Centers of America's unlawful and illegal conduct, both Elettronica Pagani and Cryo Generation sent communications to Cryo Centers of America demanding that it immediately cease and desist.[7] But Mr. Slater, on behalf of Cryo Centers of America, ignored this demand and responded, "I will continue to sell the units that I have already purchased."[8]

Subsequent evidence obtained by Cryo Generation indicates that Cryo Centers of America

---

[5] Pagani Cryo T-Shock Treatment Protocols (*see* **Exhibit "A-3"** of Plaintiff's Original Petition).

[6] *Id.*

[7] Email from Grassi Gianluca to info@cryocentersofamerica.com (Sept. 11, 2018) (*see* **Exhibit "A-4"** of Plaintiff's Original Petition); Email from Stan Kapica to Tyler Stewart (Sept. 11, 2018) (*see* **Exhibit "A-5"** of Plaintiff's Original Petition).

[8] Email from Tyler Slater to Elettronica Pagani (Sept. 11, 2018) (*see* **Exhibit "A-2"** of Plaintiff's Original Petition).

continues its ongoing attempts to illegally and wrongfully sell the Cryo T-Shock in the United States and Canada:

 



.

Indeed, Cryo Generation very recently learned that Cryo Centers of America is seeking to finalize the sale of two Cryo T-Shock units in Colorado Springs, Colorado and that the sale is imminent.

As a proximate result of Cryo Centers of America's actions, Cryo Generation has suffered, and will continue to suffer, irreparable harm to its trademark, its goodwill, and its ability to sell the Cryo T-Shock unit in the United States and Canada (thus causing Cryo Generation to lose additional business), serve as the exclusive sales and distribution entity for the Cryo T-Shock in the United States and Canada, and prevent other entities from attempting to sell or distribute the Cryo T-Shock in the United States or Canada. Additionally, Cryo Centers of America already stated it will continue to unlawfully sell the Cryo T-Shock in the United States and Canada.

It is, therefore, **ORDERED, ADJUDGED, and DECREED** that that the Clerk of this

Court issue a Temporary Restraining Order, operative until October 18, 2018, and pending the

hearing ordered below, restraining Cryo Centers of America or any of its officers, agents, servants,

employees, attorneys, representatives, or any persons in active concert or participation with them

who receive actual notice of this Order from:

a. Selling, advertising, distributing, assigning, moving, using, or seeking to sell, advertise, distribute, assign, move, or use any Cryo T-Shock unit obtained outside the United States and in the possession, custody, or control of Cryo Centers of America;

b. Selling, sending, advertising, distributing, assigning, using, or seeking to sell, send, advertise, distribute, assign, or use any Cryo Generation's trademark;

c. Directly or indirectly interfering with Cryo Generation's Exclusive Distribution Agreement with Elettronica Pagani; and

d. Directly or indirectly interfering with Cryo Generation's exclusive right to distribute and sell the Cryo T-Shock unit in the United States and Canada.

It is further **ORDERED, ADJUDGED, and DECREED** that Cryo Centers of America

must immediately return to Cryo Generation all data, information, documents, and/or

communications containing the Cryo Generation trademark in Cryo Centers of America's

possession, custody, or control.

It is further **ORDERED, ADJUDGED, and DECREED** that Cryo Centers of America

must immediately preserve any and all documents and communications relating to this matter,

Cryo Generation, Elettronica Pagani, the Cryo T-Shock unit, the Cryo Generation trademark, and

the Exclusive Distribution Agreement between Cryo Generation and Elettronica Pagani in Cryo

Centers of America's possession, custody, or control.

It is further **ORDERED, ADJUDGED, and DECREED** that Cryo Generation shall, prior

to the issuance of the temporary restraining order, file with the Clerk a bond executed by Cryo

Generation in the sum of $_____, payable to Cryo Centers of America,

approved and conditioned as the law requires.

It is further **ORDERED, ADJUDGED, and DECREED** that Cryo Generation's Application for a Temporary Injunction, as contained in its Original Petition, will be heard on the _____ day of October, 2018 at _____: _____ .m.

**IT IS SO ORDERED.**

**SIGNED** this the _____ day _____, 2018.


_____
**JUDGE PRESIDING**